1

**KJC LAW GROUP, A.P.C.**
Kevin J. Cole (SBN 321555)
9701 Wilshire Blvd., Suite 1000
Beverly Hills, CA 90212
Telephone: (310) 861-7797
e-Mail: kevin@kjclawgroup.com

Attorneys for Plaintiff
*Dana Hughes*

2

3

4

5

6

7

8

9       **UNITED STATES DISTRICT COURT**

10      **CENTRAL DISTRICT OF CALIFORNIA**

11

12

| | |
|---|---|
| DANA HUGHES, individually and on behalf of all others similarly situated,<br><br>　　　Plaintiff,<br><br>v.<br><br>PETLAB CO., a Delaware corporation; and DOES 1 to 10, inclusive,<br><br>　　　Defendants. | CASE NO.<br><br>**CLASS ACTION COMPLAINT FOR:**<br><br>　1. **Violation of the California Consumers Legal Remedies Act, Cal. Civ. Code §§ 1750, *et seq.*; and**<br>　2. **Violation of California's Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200, *et seq.***<br><br>Filed Concurrently:<br><br>　1. Plaintiff's CLRA Venue Affidavit<br><br>(***JURY TRIAL DEMANDED***) |

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

-1-

CLASS ACTION COMPLAINT

Plaintiff Dana Hughes ("Plaintiff"), individually and on behalf of all others similarly situated, complains and alleges as follows based on personal knowledge as to herself, on the investigation of her counsel, and on information and belief as to all other matters.  Plaintiff believes that substantial evidentiary support will exist for the allegations set forth in this complaint, after a reasonable opportunity for discovery.

## NATURE OF ACTION

1.     Plaintiff brings this Class Action Complaint to challenge PetLab Co.'s ("PetLab" or "Defendant") deceptive advertising practices.  Specifically, PetLab's automatic renewal and continuous service offers in connection with a number of dog and cat supplies, treats, snacks and chews available through its website (https://thepetlabco.com/collections) violates clearly established law.

2.     Among other things, PetLab (a) enrolls consumers in automatic renewal and continuous service subscriptions without providing clear and conspicuous disclosures about the program or the associated charges; (b) charges consumers' credit and debit cards without first obtaining their "affirmative consent" to the charge; and (c) fails to provide a cost-effective, timely, and easy-to-use mechanism for cancellation.

3.     In short, PetLab's automatic renewal and continuous service offers violate California's Automatic Renewal Law (the "ARL"), Cal. Bus. & Prof. Code §§ 17600, *et seq.*, which requires companies like PetLab to clearly and conspicuously explain "automatic renewal offer terms."  As a result of these ARL violations, PetLab has violated the California Consumer Legal Remedies Act (the "CLRA"), Cal. Civ. Code §§ 1750, *et seq.  See King v. Bumble Trading, Inc.*, 393 F.Supp.3d 856, 870 (N.D. Cal. 2019) (an ARL violation can form the basis for a CLRA claim); *see also Johnson v. Pluralsight, LLC*, 728 F. App'x 674, 676–77 (9th Cir. 2018) ("[Plaintiff's] complaint alleges that Pluralsight violated the ARL by charging him without first providing information on how to cancel the

subscription. The record also indicates that consumers signing up for trial subscriptions were not specifically given instructions on how to cancel before payment. This amply satisfies the UCL requirement that an unlawful business practice be any violation of 'other laws.'").

4. PetLab has also violated the CLRA because (a) it "[u]ses[] deceptive representations . . . in connection with [its] services" and "[a]dvertis[es] . . . [its] services with [the] intent not to sell them as advertised." *See* Cal. Civ. Code §§ 1770(a)(4) & (9).

5. In addition, because PetLab's automatic renewal "business practices" violate the ARL, they also violate California Business & Professions Code §§ 17200 (the "UCL"). *See*, *e.g.*, *Kasky v. Nike, Inc.*, 27 Cal.4th 939, 950 (2002) (upholding false advertising claims against Nike; the Supreme Court explained that the "unlawful" prong of § 17200 makes a violation of the underlying law a *per se* violation of the UCL; the court held, "The UCL's scope is broad. By defining unfair competition to include any '*unlawful* . . . business act or practice,' the UCL permits violations of other laws to be treated as unfair competition that is independently actionable.") (emphasis in original); *see also Stop Youth Addiction, Inc. v. Lucky Stores, Inc.*, 17 Cal.4th 553, 561 (1998), *overruled on other grounds in Arias v. Superior Court*, 46 Cal.4th 969 (2009) (holding that § 17200 allows a remedy even if the underlying statute confers no private right of action). California law is clear that virtually any law or regulation—here, the ARL—can serve as a predicate for a § 17200 "unlawful" violation. *See People v. E.W.A.P., Inc.*, 106 Cal.App.3d 315, 319 (1980); *Farmers Ins. Exchange v. Superior Court*, 2 Cal.4th 377, 383 (1992) (holding that § 17200 "borrows" violations of other laws and treats them as unlawful practices independently actionable under § 17200).

## THE PARTIES

6. Plaintiff Dana Hughes is and at all relevant times mentioned was both a resident of Los Angeles County, California and a "consumer," as defined by Cal.

Civ. Code § 1761(d) and Cal. Bus. & Prof. Code § 17601(d).

7.     PetLab is a Delaware corporation with its principal place of business in New York, New York.  PetLab is and at all relevant times mentioned was a "person," as defined by Cal. Civ. Code § 1761(c).  Through its website, PetLab offers a number of dog and cat supplies, treats, snacks and chews.

8.     Plaintiff does not know the true names or capacities of the persons or entities sued as DOES 1 to 10, inclusive, and therefore sues such Defendants by such fictitious names.  Plaintiff is informed and believes, and upon such information and belief alleges, that each of the DOE Defendants is in some manner legally responsible for the damages suffered by Plaintiff and the Class members as alleged in this Complaint.  Defendants shall together be referred to as "Defendants" or "PetLab."

## JURISDICTION AND VENUE

9.     This Court has subject matter jurisdiction over this action pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d)(2), because the total matter in controversy exceeds $5,000,000 and there are over 100 members of the proposed class.  Further, at least one member of the proposed class is a citizen of a State within the United States and at least one defendant is the citizen or subject of a foreign state.

10.     The Central District of California has specific personal jurisdiction over PetLab.  Specific jurisdiction over a non-resident defendant exists where: (1) "[t]he non-resident defendant . . . purposefully direct[s] [it]s activities or consummate[s] some transaction with the forum or resident thereof; or perform[s] some act by which [it] purposefully avails [it]self of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;" (2) the claim is one that "arises out of or relates to" the defendant's activities in the forum state; and (3) the exercise of jurisdiction comports with "fair play and substantial justice, i.e. it must be reasonable." *Schwarzenegger v. Fred Martin*

CLASS ACTION COMPLAINT

*Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004).  The plaintiff need only establish the first two prongs, while it is the defendant's burden to "present a compelling case" that the exercise of jurisdiction would not be reasonable.  *Id.*

11.  ***Purposeful Availment.***  Under the first prong of the three-part test, "purposeful availment" includes both purposeful availment and purposeful direction, which are two distinct concepts.  *Id.*  Where a case sounds in tort, as here, courts employ the purposeful direction test.  Purposeful direction requires the defendant have "(1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state."  *Morrill v. Scott Fin. Corp.*, 873 F.3d 1136, 1142 (9th Cir. 2017) (citing *Schwarzenegger*, 374 F.3d at 802).  On information and belief, PetLab regularly sells its products to customers in California, including Plaintiff, who purchased and received PetLab's "Itch Relief Chew Pro" in Los Angeles County, California.  In addition, because PetLab does a substantial amount of business in California, it is knowingly employing an illegal subscription scheme directed at and harming California residents, including Plaintiff.

12.  ***Claim Arising Out of Action in the Forum Prong.***  Under the second prong of the three-part specific jurisdiction test, personal jurisdiction exists where, as here, the claim "arises out of or relates to" the defendant's activities in the forum state.  Courts in the Ninth Circuit use a "but for" test to determine whether the claim "arises out of" the nonresident's forum-related activities.  In other words, the test is satisfied if the plaintiff would not have suffered loss "but for" defendant's activities.  *Ballard v. Savage*, 65 F.3d 1495, 1500 (9th Cir. 1995).  Here, PetLab's contact with the forum—knowingly employing an illegal subscription scheme directed at California residents—is the basis of its violations of various false advertising statutes.  But for PetLab's contact with the forum, Plaintiff (and the thousands of other individuals who purchased PetLab's deceptively advertised products) would not have suffered harm.

13.    ***Venue.***  Venue is proper in the United States District Court for the Central District of California pursuant to 28 U.S.C. § 1391 because PetLab:

a)    is authorized to conduct business in this District and has intentionally availed itself of the laws and markets within this District;

b)    does substantial business within this District;

c)    is subject to personal jurisdiction in this District because it has availed itself of the laws and markets within this District; and the injury to Plaintiff occurred within this District.

## GENERAL ALLEGATIONS

14.    On November 19, 2022, Plaintiff visited PetLab's website to shop for a supplement for her dog.  Plaintiff visited the site from her home in Los Angeles County.   Plaintiff ultimately purchased PetLab's "Itch Relief Chew Pro" for $29.96.   After this initial transaction, however, PetLab enrolled Plaintiff into an automatic renewal subscription—automatically charging her another $29.96 one month later—without providing the clear and conspicuous disclosures required by California law.

15.    When Plaintiff discovered the second charge, she attempted to cancel her subscription so that no more charges would be made to her credit card. However, despite numerous attempts to cancel her subscription—e.g., searching PetLab's website for information about how to "cancel," "end," or "stop" any further recurring charges—Plaintiff was unable to do so.  Because Plaintiff could not decipher how to cancel her subscription online, she was forced to email a customer service representative on or about December 20, 2022, requesting to cancel her subscription.

16.    But even in spite of Plaintiff's email—in which she explained she was unaware of her subscription and how to cancel it—PetLab *still* attempted to prevent Plaintiff from cancelling her subscription.   Rather than cancelling Plaintiff's

subscription immediately, PetLab (a) suggested instead that Plaintiff "pause" her subscription or "change its frequency according to [he]r needs," (b) refused to refund the second charge or cancel the shipment, and (c) required that Plaintiff ***take yet another step in order to cancel her subscription***, by explicitly demanding that Plaintiff "let us [PetLab] know how you would like to proceed. We will wait for your reply."   The email PetLab sent to Plaintiff is below (with Plaintiff's email address redacted):

**Vinjo (PetLab Co. )**

Dec 20, 2022, 01:25 PST

Hi Dana,

Thank you for contacting customer care. I'm sorry to hear that you're not aware of your subscription. Allow me to assist you with this.

Before I cancel your subscription, I just want to make sure that you're aware that your subscription can be **paused** for a few months or we can **change its frequency** according to your needs.

You can also amend your subscription anytime by accessing your account at account.petlab.com/register. Just make sure you register the account ▮▮▮▮▮▮▮▮▮▮ before logging in.

Regarding the status of your current order, I'm sorry, but we can no longer cancel or modify it since it's already shipped. You can track it by clicking its tracking number - 9274890306529409072240

Don't worry! We'd like to offer you a **50% discount** on the order should you decide to just keep it instead of returning it to us. If not, we'll proceed to assist you with the returns process.

Please let us know how you would like to proceed. We will wait for your reply.

Stay pawsome,
Vinjo

17.    On information and belief, it appears many consumers like Plaintiff have been unable to cancel their PetLab accounts (let alone through a cost-effective, timely, and easy-to-use mechanism for cancellation).   On further information and belief, PetLab knowingly makes its cancellation process *extremely* difficult and time consuming, knowing that many consumers like Plaintiff will decide—after attempting to cancel their subscriptions—that they are better off being charged $30 monthly than spending hours upon hours frustratingly trying to cancel their subscriptions.

18.    For example, there are over ***129 Better Business Bureau complaints***, many of which complain about the confusion, frustration, and time and money lost trying to figure out PetLab's subscription and cancellation practices.  As just a few (very recent) examples:

**Initial Complaint**
03/31/2023

**Complaint Type:** Billing/Collection Issues
**Status:** Answered

I signed up for a subscription for my dog just one time I tried calling impossible to get in contact with someone call my bank to cancel the subscription. I keep receiving three packages at a time with the probiotic chews Im still paying for it coming out of my bank because its like on some kind of auto pay my dog did not eat them. I have about 20 right now thats just sitting here. I would like to get this issue resolved please

**Initial Complaint**
01/13/2023

**Complaint Type:** Problems with Product/Service
**Status:** Resolved

I have found 2 different order numbers from this company for my 1 order placed on December 26, 2022: ************ and a Store Order #******* for these items: Product(s): Probiotic Chew - Subscription x 3, Clear Ears Therapy - Monthly Subscription (Bump offer) x 1, 1X Beef Jerky - Subscription (Bump Offer) x 1, 2.5oz Wild Caught Salmon Bites (Free Gift) x 1. Total cost $87.27. I gave my two pit bulls 2 probiotic chews each for 3 days in a row on Wednesday, January 4, 2023 - Friday, January 6, 2023. On the 4th day, Saturday, January 7, 2023, one of my pit bulls had died overnight. I immediately stopped the use of the probiotics for my other dog. On Sunday, January 8, 2023 I cancelled the monthly subscription, requested a refund and a return authorization so I can send the products back. The website said I would hear from my request within 2 business days. It has been 5 days with no response from *********** other than automated emails offering me free items and pet advice.

CLASS ACTION COMPLAINT

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28



**Initial Complaint**
12/06/2022

**Complaint Type:** Delivery Issues
**Status:** Answered ❓

I just want to cancel a subscription that I was signed up for without y knowledge. This company auto ships product without consent and it costs a fortune. Their website is rigged to not work. I can provide all of the order numbers, the first one being the ONLY one I authorized:7/11/22 order #******* (authorized a one time order)8/11/22 order #******* (not authorized, I was charged $50.75)9/11/22 order #******* (I did not authorize this)10/10/22 order #******* (not authorized)11/11/22 order #******* (not authorized)I have been trying desperately to cancel this auto ship and the website is rigged to not allow you to proceed. I thought my computer was broken, or that I was crazy. The phone number just rings and rings and messages have not been returned. I can't afford this product (that doesn't even work) and I'm desperate to stop $50+ being stolen from me every single month as I desperately try to stop them. Can you help?



**Initial Complaint**
12/01/2022

**Complaint Type:** Billing/Collection Issues
**Status:** Answered ❓

This company refuses to let me cancel my subscription. *** tried over a dozen ********** doesnt work, & everytime I try to contact them through their contact form it says theres an error. Their instagram is full of comments of others having the same ******* ****** finally respond on Instagram messages after multiple comments (which they later delete) & their response was to refuse to delete my account- supposedly for security reasons. They claim my account is inactive due to payment failure but I want it completely canceled because if the payment doesnt fail in the future, I could be charged again. Them refusing to delete my ****************** that Ive been trying to cancel for months now (way before my payment failed) is unethical & Ive been told its illegal as well. I truly wanted to like this **************** stayed a customer if it werent for the unethical scam practices & horrific customer service. You cant make it impossible for a bunch of people to cancel subscriptions & delete their accounts, thats unethical & illegal. I want my subscription & account CANCELLED, not just listed as inactive

**Initial Complaint**
11/29/2022

**Complaint Type:** Problems with Product/Service
**Status:** Resolved ❓

I signed up for a recurring subscription for Dog supplements four months ago, I tried the product but it did not work as expected for my dog issues on his health improvement. I went to the website a few days ago and tried canceling my subscription using the site tab to cancel any future shipments of the product. Once I click on the cancel subscription box nothing happens, it stays on the same cancel subscription tab, however they offer to delay future shipments but they wont allow customers to cancel it. I have tried a pc , my phone, a laptop a tablet on several days thinking it might have been just a temporary glitch. Tried my cellular network different wi fi and nothing seems to allow to cancel. I contacted the company via e-mail and they ask for a reason for cancellation. Same question they have on the website for canceling subscriptions. Now I have to open a charge dispute with **** to cancel my subscription that way, which has caused my bank to send a replacement card with a $40 fee. Business should be transparent and do not miss lead customers in thinking that canceling is and option on their website.

-9-

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28



**Initial Complaint**
11/10/2022

**Complaint Type:** Problems with Product/Service
**Status:** Resolved

I purchased a subscription and after two deliveries decided to get a similar product from my veterinarian. After scouring their website to try to cancel, then trying to call (no one ever answers and cannot leave a message) and trying to contact them via email, there appears to be NO WAY to cancel the subscription. I had to literally cancel my debit card causing me other problems just so that I don't get billed. I want them to contact me, ask me what I need, then I tell them I want to cancel the subscription and them to say Ok, it's cancelled. I want to no longer get another email from them. My email is ************************** which is what the account was created under. Currently, it shows "no subscriptions". Yet I continuously (today) get emails saying my card was declined and correct this right away. I WANT NO FURTHER CONTACT FROM YOU AND I WANT YOU TO REMOVE ANY PII INFORMATION ON ME FROM YOUR WEBSITE ASAP.



**Initial Complaint**
10/31/2022

**Complaint Type:** Billing/Collection Issues
**Status:** Answered

Credit I've three card charges against my **** with No contact with the company.I've had to cancel the card through the **** of America Fraud ******** Lab sells pet products. I've no pet.9/22/22 $64.71 10/6/22 $40.40 10/19/22 $39.30



**Initial Complaint**
10/17/2022

**Complaint Type:** Problems with Product/Service
**Status:** Answered

I made a request to stop all subscriptions and future orders because we could no longer afford to continue ordering the products. I reached out to support because the website was not allowing me to sign in to cancel the subscription. The support team sent me a reply back to my subscription on October 7th stating:**** (PetLab Co. )Oct 7, 2022, 14:51 CDT **
************** *** **** ******** *** ******* **** **** *********** *** **** ********** *** **** ****** ** *******
**** ** ******** ****** ************ *** ** **** ** ** *** ** ** ******* *********** ** *** ****** ***** ** *********

************ However I just received a full order notification by email again on October 15th, 2022.Order Date: 10/16/2022 Probiotic Chew - Subscription Quantity: 3 Total: ***** Subtotal $67.17 Shipping $0.00 Tax $5.37 Total $72.54 Hundreds of other reviews on their official ******** page say others were never refunded. I have sent a follow up email to support requesting a full refund instantly and to cancel this order on October 16th, 2022. I also sent a message through ******** messenger to them to stop this order and for a full refund. It was charged to my Barclaycard on October 16th, 2022.

**Initial Complaint**
09/29/2022

**Complaint Type:** Delivery Issues
**Status:** Answered

This company continues to bill me beyond my subscription cancelation (twice!). Unfortunately, ****** does not intercede for ***************************************************************** prompts via their Contact Us portal to share this issue. Unacceptable way to service customers. Ordered June 28, 2022 and received Canceled July and received acknowledgment of cancelation September invoice # ***************** $72.96

-10-

1
2



**Initial Complaint**
08/01/2022

**Complaint Type:** Problems with Product/Service
**Status:** Answered

3
4
5

Made an initial purchase on June 29. Today I received another charge and confirmation of an order I didnt make. Same scenario as just about every other complaint. Ive contacted them twice, but doubt I will hear back. Ive cancelled my payment method for any other charges in the future, but would like my money back and hope other people are smarter than I was for using this company.

6
7
8
9



**Initial Complaint**
07/13/2022

**Complaint Type:** Delivery Issues
**Status:** Answered

10
11
12

I ordered PetLab Joint chews in June/2022 which I received and used. I did not sign up for a subscription and yet received a shipment of 8 bottles I never ordered of a dental product.....I've tried to call the number on their product and it's not usable. It just goes to a weird busy signal. This is a scam and I want help! I just wrote an email and I want to return these dental bottles!!! And to get myself off of this subscription rollercoaster!!!!!*****************************

13
14
15



**Initial Complaint**
06/30/2022

**Complaint Type:** Delivery Issues
**Status:** Answered 

16
17
18
19
20

I placed an order on 5/30/2022 for a one-time purchase of their ********** Chews. I received the product, my dog loved it, however, he still had mobility issues after a couple of weeks. I never intended to purchase any more of this product. Fast forward to 6/30/2022 and I get an email that my order is on the way and I was also charged on my credit card. I NEVER ordered another jar of this. I tried to go to the website to cancel and guess what, there is no subscription for me to even cancel. The site asked me to set up an account because I do not have one with them. This is total fraud! There is no contact phone number on their website either. This is a very shady company and I wish to be refunded the $32.32 which they charged me as well as ensure they never send me any more of their products. Thank you.

21
22



**Initial Complaint**
05/17/2022

**Complaint Type:** Problems with Product/Service
**Status:** Answered

23
24
25
26
27
28

I ordered probiotic chews for my pet from PetLab. I ordered a one month supply only to see if the product would be effective for my pet. I DID NOT subscribe to the automatic delivery. On Friday, May 13, 2022 another monthly supply of the probiotic arrived at my doorstep and I have been charged for it.I was able to cancel my subscription through PetLab's website, however, I am not able to complete my return. When I go on the website and click where it says to initiate a return, it takes me to a Track My Order page only.I have emailed them 4 times through their online form, however, no one has returned my email.I just tried again, to initiate a return through their online help and again, it takes you to Track My Order. There is no way to initiate the Return Item form.I would like my money refunded and confirmation that my subscription, that I did not authorize, has been cancelled.Thank you.***********************************

-11-

**Initial Complaint**
04/21/2022

**Complaint Type:** Billing/Collection Issues
**Status:** Resolved

I am trying to cancel my subscription and I have attempted to use the 'Forgot your password?' option on their website; however, no link has been e-mailed to me to allow me to reset my password. I am trying to cancel my subscription to their Petlab Co. ********* Chews. I need help.

19.    Automatic renewal subscriptions affecting California consumers are governed by the ARL, Cal. Bus. & Prof. Code §§ 17600, *et seq.*, which requires companies like PetLab to clearly and conspicuously explain "automatic renewal offer terms," including by providing the following clear and conspicuous disclosures:

(a) that the subscription or purchasing agreement will continue until the consumer cancels;

(b) the description of the cancellation policy that applies to the offer;

(c) the recurring charges that will be charged to the consumer's credit or debit card or payment account with a third party as part of the automatic renewal plan or arrangement, and that the amount of the charge may change, if that is the case, and the amount to which the charge will change, if known;

(d) the length of the automatic renewal term or that the service is continuous, unless the length of the term is chosen by the consumer; and

(e) the minimum purchase obligation, if any.

*See* Cal. Bus. & Prof. Code § 17601(b)(1) – (5).

20.    None of the above disclosures were properly provided to Plaintiff. And as explained above, PetLab also failed to provide a means for Plaintiff to cancel by using a "cost-effective, timely, and easy-to-use mechanism for cancellation." *Id.*, § 17602(b).

21.    Critically, the ARL requires the automatic renewal offer terms must

-12-

be presented to the consumer both:

> (a) *before* the purchasing contract is fulfilled, and in "visual proximity" to the *request for consent to the offer*; and

> (b) *clearly and conspicuously*, defined by the statute as one or more of the following:

>> i.  in larger type than the surrounding text;

>> ii. in contrasting type, font, or color to the surrounding text of the same size; or

>> iii. set off from the surrounding text of the same size by symbols or other marks in a manner that clearly calls attention to the language.

*See id.*, §§ 17602(a)(1) & 17601(c).

22.    As shown from the following screenshot, PetLab does not clearly and conspicuously disclose its automatic renewal offer terms in the manner required by Section 17602.  For example, PetLab does not use bold, highlighted, all-capitalized, or different-colored text for the automatic renewal terms; there is no "call out" box or anything like that near the terms.  Instead, the disclosures appear in very small font, ***at the very bottom of the checkout screen***, and are deliberately difficult to read.

///

///

///

///

///

///

///

///

///

-13-

CLASS ACTION COMPLAINT

| | Itch Relief Chew Pro - Subscription | ~~$43.69~~ |
| | **Frequency:** Billed Monthly | **$34.95** |
| | 2.5oz Wild Caught Salmon Bites (Free Gift) | ~~$19.95~~ |
| | | **FREE** |

| Subtotal | $63.64 |
| Shipping | ~~$4.99~~ FREE |
| Total Savings | -$33.68 |
| Taxes | $2.71 |
| **Order Total** | **$37.66** |

**Your discount has successfully been applied!**

‹ Return to shipping method                    **Complete Order**

By completing this purchase, you agree to be charged the total amount according to the order above. Your subscription will automatically renew and your credit card will be charged the subscription fee at your selected frequency. You can easily cancel or modify your subscription online or via customer service.

23.     Nor does PetLab properly disclose (a) any description of the cancellation policy that applies to the offer; (b) that the recurring charges will be charged to the consumer's credit or debit card or payment account with a third party as part of the automatic renewal plan; or (c) when the consumer will be charged.

24.     In addition, Plaintiff did not receive an ARL-compliant retainable acknowledgement (e.g., email) explaining or providing (i) the automatic renewal offer's terms, (ii) the cancellation policy, and (iii) information about how to cancel PetLab's services.   All are required by law.   *See* Cal. Bus. & Prof. Code § 17602(a)(3).

25.     The ARL also requires that "a business that allows a consumer to accept an automatic renewal or continuous service offer online shall allow a consumer to terminate the automatic renewal or continuous service offer *exclusively online, at will*, and without engaging any further steps that obstruct or delay the

-14-

CLASS ACTION COMPLAINT

consumer's ability to terminate the automatic renewal or continuous service immediately." Cal. Bus. & Prof. Code § 17602(d)(1). The online method of termination must be in the form of either: (a) "[a] prominently located direct link or button which may be located within either a customer account or profile, or within either device or user settings," or (b) "[b]y an immediately accessible termination email formatted and provided by the business that a consumer can send to the business without additional information." *Id.* PetLab violated these provisions, as well.

26.     If Plaintiff had known that PetLab was going to enroll her in a program under which it would automatically renew her purchase for a subsequent term, post associated charges to her credit card without authorization, and make it impossible to cancel, Plaintiff would not have purchased PetLab's services and would not have paid any money to it.

## CLASS ACTION ALLEGATIONS

27.     Plaintiff brings this action on behalf of herself and all persons similarly situated pursuant to Rule 23(a), (b)(2), and (b)(3) of the Federal Rules of Civil Procedure and seeks certification of the following class:

> All persons in the United States who purchased a product or service from PetLab as part of an automatic renewal plan or continuous service offer within the four years prior to the filing of this Complaint.

28.     The above-described class of persons shall hereafter be referred to as the "Class." Excluded from the Class are any and all past or present officers, directors, or employees of PetLab, any judge who presides over this action, and any partner or employee of Class Counsel. Plaintiff reserves the right to expand, limit, modify, or amend this class definition, including the addition of one or more subclasses, in connection with her motion for class certification, or at any other time, based upon, *inter alia*, changing circumstances and/or new facts obtained during discovery.

CLASS ACTION COMPLAINT

29.     In the alternative, Plaintiff seeks certification of the following class pursuant to Rule 23(a), (b)(2), and (b)(3) of the Federal Rules of Civil Procedure:

> All persons in the State of California who purchased a product or service from PetLab as part of an automatic renewal plan or continuous service offer within the four years prior to the filing of this Complaint.

30.     **Numerosity**.  The Class is so numerous that joinder of all members in one action is impracticable.  The exact number and identities of the members of the Class is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, but on information and belief, Plaintiff alleges that there are thousands of members of the Class, if not more.  *E.g.*, the LinkedIn profile page of PetLab's CEO (Christopher Masanto) describes PetLab as having "thousands of happy customers."  https://uk.linkedin.com/in/christophermasanto.  But the precise number of Class members is unknown to Plaintiff.

31.     **Typicality**.  Plaintiff's claims are typical of those of other members of the Class, all of whom have suffered similar harm due to PetLab's course of conduct as described in this Complaint.  Identical to all members of the Class, PetLab (a) enrolled Plaintiff in an automatic renewal and continuous service subscription without providing clear and conspicuous disclosures as required by California law; (b) charged Plaintiff for those services without obtaining her affirmative consent; (c) did not provide Plaintiff with information on how to cancel those services; (d) did not provide Plaintiff with a cost-effective, timely, and easy-to-use mechanism for cancellation, nor a method of cancellation required by § 17602; and (e) failed to send an ARL-compliant retainable acknowledgement consistent with Cal. Bus. & Prof. Code § 17602(a)(3).  Plaintiff is advancing the same claims and legal theories on behalf of herself and all absent members of the Class.  PetLab has no defenses unique to the Plaintiff.

32.     **Adequacy of Representation**.  Plaintiff is an adequate representative

of the Class and will fairly and adequately protect the interests of the Class. Plaintiff has retained attorneys who are experienced in the handling of complex litigation and class actions, and Plaintiff and her counsel intend to prosecute this action vigorously.  Plaintiff has no antagonistic or adverse interests to those of the Class.

33.     **Existence and Predominance of Common Questions of Law or Fact**.  Common questions of law and fact exist as to all members of the Class that predominate over any questions affecting only individual members of the Class. These common legal and factual questions, which do not vary among members of the Class, and which may be determined without reference to the individual circumstances of any member of the Class, include, but are not limited to, the following:

a) Do PetLab's automatic renewal practices violate the ARL, Cal. Bus & Prof. Code §§ 17600, *et seq*.?

b) Does PetLab violate the CLRA, Cal. Civ. Code §§ 1750, *et seq*.?

c) Does PetLab violate the UCL, Cal. Bus. & Prof. Code §§ 17200, *et seq*.?

d) Whether the members of the Class are entitled to damages and/or restitution.

e) What type of injunctive relief is appropriate and necessary to enjoin PetLab from continuing its unlawful automatic renewal practices?

f) Whether PetLab's conduct was undertaken with conscious disregard of the rights of the members of the Class and was done with fraud, oppression, and/or malice.

34.     **Superiority**.  A class action is superior to other available methods for the fair and efficient adjudication of this controversy because individual litigation of the claims of all members of the Class is impracticable.  Requiring each individual class member to file an individual lawsuit would unreasonably consume

-17-

the amounts that may be recovered.  Even if every member of the Class could afford individual litigation, the adjudication of at least thousands of identical claims would be unduly burdensome to the courts.  Individualized litigation would also present the potential for varying, inconsistent, or contradictory judgments and would magnify the delay and expense to all parties and to the court system resulting from multiple trials of the same factual issues.

35.    By contrast, the conduct of this action as a class action, with respect to some or all of the issues presented, presents no management difficulties, conserves the resources of the parties and of the court system, and protects the rights of the members of the Class.  Plaintiff anticipates no difficulty in the management of this action as a class action.  The prosecution of separate actions by individual members of the Class may create a risk of adjudications with respect to them that would, as a practical matter, be dispositive of the interests of the other members of the Class who are not parties to such adjudications, or that would substantially impair or impede the ability of such non-party Class members to protect their interests.

36.    **Ascertainability**.    Upon information and belief, PetLab keeps extensive computerized records of its sales and customers through, among other things, databases storing customer orders, customer order histories, customer profiles, customer loyalty programs, and general marketing programs.  PetLab has one or more databases through which a significant majority of members of the Class may be identified and ascertained, and it maintains contact information, including email addresses and home addresses (such as billing, mailing, and shipping addresses), through which notice of this action is capable of being disseminated in accordance with due process requirements.

37.    The California Class also satisfies each of the class action requirements set forth above.  The allegations set forth above with regards to the Class, therefore, apply equally to the California Class.

**CLAIMS FOR RELIEF**

**First Cause of Action**

**Violation of the California Consumers Legal Remedies Act,**

**Cal. Civ. Code §§ 1750, *et seq*. (Automatic Renewal Law)**

**(By Plaintiff Against Defendants on Behalf of the Class)**

38.     Plaintiff repeats and re-alleges the allegations contained in every preceding paragraph as if fully set forth herein.

39.     The CLRA is a California consumer protection statute which allows plaintiffs to bring private civil actions for "unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction . . . which results in the sale or lease of goods or services to any consumer."  Cal. Civ. Code § 1770(a).  The purposes of the CLRA are "to protect consumers against unfair and deceptive business practices and to provide efficient and economical procedures to secure such protection."  Cal. Civ. Code § 1760.

40.     California enacted the ARL "to end the practice of ongoing charging of consumer credit or debit cards or third party payment accounts without the consumers' explicit consent for ongoing shipments of a product or ongoing deliveries of service."  Cal. Bus. & Prof. Code § 17600.

41.     Plaintiff and each member of the Class are "consumers" as defined by California Business & Professions Code section 17601(d).  PetLab's sales of its products and/or services on its website to Plaintiff and the Class were for an "automatic renewal" within the meaning of California Business & Professions Code section 17601(a).

42.     Defendants failed to clearly and conspicuously disclose (a) the nature of the subscription agreement as one that will continue until the consumer canceled, (b) how to cancel the subscription, (c) the recurring amounts that would be charged to the consumer's payment account, (d) the length of the automatic renewal term, or (e) any minimum purchasing obligation(s).

43.     Defendants have violated several of the ARL's provisions:

a)  Defendants have violated Cal. Bus. & Prof. Code § 17602(a)(1) because their offer did not "include a clear and conspicuous explanation of the price that will be charged . . ."

b)  Defendants have violated Cal. Bus. & Prof. Code § 17602(a)(2) by charging consumers' credit and debit cards without first obtaining their "affirmative consent" to the charge.

c)  Defendants have violated Cal. Bus. & Prof. Code § 17602(d)(1) by failing to "allow a consumer" who "accept[s] an automatic renewal or continuous service offer online" to "terminate the automatic renewal or continuous service exclusively online, at will, and without engaging any further steps that obstruct or delay the consumer's ability to terminate the automatic renewal or continuous service immediately."

d)  Defendants have violated Cal. Bus. & Prof. Code § 17602(a)(3) by failing to provide a permanently retainable post-transaction acknowledgment that allows cancellation before payment.

e)  Defendants have violated Cal. Bus. & Prof. Code § 17602(b) by failing to provide a cost-effective, timely, and easy-to-use mechanism for cancellation.

44.     Through their violations of the ARL, Defendants have violated the CLRA. *See King*, 393 F.Supp.3d at 870 (an ARL violation can form the basis for a CLRA claim); *see also Pluralsight*, 728 F. App'x at 676–77 ("[Plaintiff's] complaint alleges that Pluralsight violated the ARL by charging him without first providing information on how to cancel the subscription.  The record also indicates that consumers signing up for trial subscriptions were not specifically given instructions on how to cancel before payment.  This amply satisfies the UCL requirement that an unlawful business practice be any violation of 'other laws.'").

45.     As to this cause of action, _at this time_, Plaintiff seeks only injunctive relief at this time.  Pursuant to Cal. Civ. Code § 1782, in conjunction with the filing of this action, Plaintiff's counsel is notifying Defendants by separate letter of the particular violations of the CLRA and demanding that it correct or agree to correct the actions described in this Complaint.  If Defendants fail to do so, Plaintiff shall amend her Complaint as of right (or otherwise seek leave to amend the Complaint) to include compensatory and monetary damages (including punitive damages) to which Plaintiff and the Class is entitled.

## Second Cause of Action

**Violation of the UCL (Bus. & Prof. Code, §§ 17200, _et seq._)**

**(By Plaintiff Against Defendants on Behalf of the Class)**

46.     Plaintiff repeats and re-alleges the allegations contained in every preceding paragraph as if fully set forth herein.

47.     The UCL prohibits, and provides civil remedies for, "unfair competition," which is defined as "any unlawful, unfair or fraudulent business act or practice."  The UCL is written in "sweeping language" to include "anything that can properly be called a business practice and that at the same time is forbidden by law."  _Bank of the West v. Superior Court_, 2 Cal.4th 1254, 1264 (1992) (internal brackets and quotation marks omitted).

48.     The UCL has several substantive "prongs" which are a function of the statutory definition of "unfair competition."  More specifically, under the UCL, "unfair competition" includes (i) an "unlawful" business act or practice, (ii) an "unfair" business act or practice, and (iii) a "fraudulent" business act or practice. _See_ Bus. & Prof. Code, §§ 17200, _et seq_.

49.     The "unlawful" prong of the UCL makes a violation of the underlying law a _per se_ violation of the UCL.  "By defining unfair competition to include any '_unlawful_ . . . business act or practice,' the UCL permits violations of other laws to be treated as unfair competition that is independently actionable."  _Kasky_, 27

Cal.4th at 950 (emphasis in original).

50.     Defendants committed "unlawful," "unfair," and/or "fraudulent" business practices by, among other things: (a) enrolling Plaintiff and the Class in an automatic renewal and continuous service subscription without providing clear and conspicuous disclosures as required by California law; (b) charging Plaintiff and the Class for those services without obtaining the requisite affirmative consent; (c) failing to provide Plaintiff or the Class with information on how to cancel those services; (d) failing to provide Plaintiff or the Class with a cost-effective, timely, and easy-to-use mechanism for cancellation, nor a method of cancellation required by § 17602; and (e) failing to send an ARL-compliant retainable acknowledgement consistent with Cal. Bus. & Prof. Code § 17602(a)(3).  Plaintiff reserves the right to allege other violations of law that constitute unlawful, unfair, or fraudulent business acts or practices.

51.     Defendants' acts and omissions as alleged in this Complaint violate obligations imposed by statute, are substantially injurious to consumers, offend public policy, and are immoral, unethical, oppressive, and unscrupulous as the gravity of the conduct outweighs any alleged benefits attributable to such conduct.

52.     There were reasonably available alternatives to further Defendants' legitimate business interests, other than the conduct described in this Complaint.

53.     Defendants' acts, omissions, nondisclosures, and misleading statements as alleged in this Complaint were and are false, misleading, and/or likely to deceive the consuming public.

54.     Plaintiff has suffered injury in fact and lost money as a result of Defendants' acts of unfair competition.

55.     Pursuant to § 17203, Plaintiff and all Class members are entitled to restitution of all amounts Defendants received from them as a result of the foregoing conduct during the four years preceding the filing of this Complaint and continuing until Defendants' acts of unfair competition cease.

56.    Pursuant to § 17203, Plaintiff is entitled to an order enjoining Defendants from committing further acts of unfair competition.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Dana Hughes prays for relief and judgment in favor of herself and the Classes as follows:

A.    For an order certifying that the action be maintained as a class action, that Plaintiff be designated the class representative, and that undersigned counsel be designated as class counsel.

B.    For an injunction putting a stop to the illegal conduct described herein and ordering Defendants to correct their illegal conduct and refrain from (i) automatically charging consumers without properly informing them in the future, and (ii) preventing consumers from cancelling their subscriptions.

C.    For pre- and post-judgment interest and costs of suit incurred herein.

D.    For attorneys' fees incurred herein pursuant to California Code of Civil Procedure section 1021.5, California Civil Code section 1780, or to the extent otherwise permitted by law.

E.    For such other and further relief as the Court may deem just and proper.

## **DEMAND FOR JURY TRIAL**

Plaintiff, on behalf of herself and the Class, hereby demands a trial by jury pursuant to Federal Rule of Civil Procedure 38(b) on all claims so triable.

DATED:  July 2, 2023                    Respectfully submitted,

                                        **KJC LAW GROUP, A.P.C.**

                                        By: */s/ Kevin J. Cole*

                                        Attorneys for Plaintiff
                                        *Dana Hughes*

CLASS ACTION COMPLAINT